Judgment rendered May 20, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,575-JAC

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA
IN THE INTEREST OF
S.D. AND T.D.

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. J-14006

Honorable Michael Nerren, Judge

* * * * *

| | |
|---|---|
| DAVID "DELL" HARVILLE, JR. | Counsel for Appellant, O.B., Father |
| O.B. | In Proper Person |
| W. MATTHEW ALTIMUS | Counsel for Appellee, State of Louisiana |
| PAMELA HARPER JACOB | Counsel for Appellee, State of Louisiana DCFS |
| MARY ALICE BROWN | Counsel for Appellee, S.D., Child |

* * * * *

Before WILLIAMS, PITMAN, and STONE, JJ.

**PITMAN, J.**

O.B., the biological father of S.D., a minor female, appeals the judgment of the trial court terminating his parental rights. For the following reasons, we affirm the judgment of the trial court.

## FACTS

J.E.H. is the mother of S.D., born to her on February 22, 2010. S.J.D. signed an acknowledgment of paternity affidavit for a child born outside of marriage and declared that he was S.D.'s *legal* father. (He is also the biological father of S.D.'s sister, T.D.[1]) Appellant O.B. was determined to be S.D.'s *biological* father in 2017.

S.D. and T.D. were adjudicated to be children in need of care because of their mother's neglect and drug use. The State, through the Department of Children and Family Service ("DCFS"), filed a petition to terminate the parental rights of J.E.H, S.J.D. and O.B. The parental rights of J.E.H. and S.J.D. were terminated as to both children on September 30, 2019. No appeal was taken from that judgment, and it is final as to those persons.

At the time the DNA test was performed which determined that O.B. is S.D.'s biological father, he was incarcerated in the State of Louisiana. The trial court approved a case plan for O.B. on November 16, 2017. The plan ordered O.B. to attend scheduled visits with his child and to engage in conversation with her during the visits to understand how she was doing emotionally and how she was adjusting to foster care. He was to show positive attention to the child, to support her in foster care and to agree to contribute $20 per month to her to be paid by money order with her name

---

[1] Parental rights of T.D. are not at issue in the case before this court.

and social security number written on it.  A case review hearing was held regarding S.D.'s adjudication in May 2018.  O.B. was not present, but he was represented by counsel.

On August 9, 2019, the DCFS filed a petition for involuntary termination of O.B.'s parental rights with regard to S.D. pursuant to La. Ch. C. art. 1015.  A hearing was held on October 21, 2019.

At the hearing, O.B. testified that he was incarcerated at Dixon Correctional Institute and was a trustee working in the Claiborne Building in Baton Rouge.  He had been incarcerated for 9 years and was serving a 15-year sentence for selling marijuana and as a fourth felony habitual offender.  He stated that he had received and signed the DCFS's form for appointment of placement resource for his child, naming his twin sister, Ylanda Jackson, for placement.  Jackson was not deemed acceptable, and O.B. failed to provide anyone else's name in her place, claiming he never received the proper form to do so.

O.B. further testified that he was never able to visit with S.D., that he knew she was born in February, but did not know the date, and that he never had an address to send a birthday card and had not sent her any letters.  He claimed that the DCFS forbade J.E.H. from taking the child to his mother's house.  He stated that he only had pictures of her as a baby, and she was nine years old at the time of the hearing.  He stated that he had been incarcerated since 2010 and did not find out that S.D. was his child until 2016 when he was contacted about the DNA test.  He testified that he had a possible date of parole on February 11, 2020, and that his plan was to get custody of his daughter, get a job and get a stable place to stay.

2

S.D.'s case worker, Meshelle Mangum, testified that O.B.'s sister could not be a placement resource for the child because she had a history with the agency. She stated that she also investigated the possibility of placing the child with O.B.'s mother, but that placement was also not satisfactory. She confirmed that she had not received any letters from O.B. for the child. She testified that S.D. had been placed in the certified foster home of Tamara Johnson, where she has lived since November 9, 2016, and that she is doing well in that placement. In fact, Johnson would like to adopt S.D. if she is freed for adoption.

Jennifer Fields, foster care supervisor for Mangum, testified that she was familiar with S.D.'s case and informed the court why the placement resource of O.B.'s sister and mother were inappropriate and why the child could not be placed with either family member.

At the conclusion of the case, the trial court conceded that it understood O.B.'s predicament of being in jail when the child was born and during the first part of her life; however, it noted that O.B. took no action whatsoever to establish a relationship with his child once he gained the knowledge that he was her biological father. It further noted that O.B. did not call her or send her cards or letters and that although he was notified of the proceedings to adjudicate the child, he did nothing to intervene in the process and assert any claim to her. For these reasons, it terminated O.B.'s parental rights pursuant to La. Ch. C. arts. 1015(5)(b), 1015(5) (c), and 1015(7). O.B. filed a pro se appeal on December 28, 2019.

## DISCUSSION

O.B. argues that the trial court erred in concluding that the state proved by clear and convincing evidence that he failed to substantially

3

comply with his case plan, that there was no reasonable expectation of significant improvement of his condition or conduct in the near future, that he failed to provide significant contributions to his children's care and support and that it was in S.D.'s best interest to have his parental rights terminated.

O.B. asserts that there are three elements of law found in La. Ch. C. art. 1015(5) which must be proven by clear and convincing evidence before his parental rights can be terminated by the trial court.

O.B. also argues that the law requires that the state must prove there has been no substantial parental compliance with a case plan for services and that, despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future. He contends that he was unable to comply with the DCFS's case plan because he was incarcerated and, thus, was unable to improve his relationship with his child, or meet her basic needs, or show her positive attention. Further, he was unable to support his child in foster care by contributing $20 per month.

O.B. further argues that the trial court erred in concluding that there was no reasonable expectation of significant improvement in his condition in the near future and asks that this court review that issue since he has a significant chance of finding employment and providing a stable home for his child based on his imminent release from incarceration.

O.B. asserts that the state is required to show that he, as a parent, failed or refused to support his child; and, absent that showing, there is no evidence of his intent to permanently avoid all parental responsibilities. He argues that all reasonable doubt should be resolved against entering such a

4

decree, which is in derogation of the natural rights of legitimate parents. Further, he contends that his failure to provide for his child's care and support must be without just cause if it is to be used to prove that he abandoned his child for purposes of termination of parental rights. He argues that he should be given a chance to work a case plan upon release from incarceration.

The state argues that the trial court did not terminate O.B.'s parental rights for his failure to complete a case plan and that the appellant cited the incorrect Louisiana Children's Code article, which should have been La. Ch. C. art. 1015(6), if he were arguing that the trial court erred in finding that he failed to comply with his case plan.

The state addresses each of O.B.'s issues and claims that the trial court did not terminate his parental rights for the reasons asserted in the brief; and, therefore, his arguments lack merit. It asserts that the trial court correctly concluded that O.B. failed to provide for his child's care and support and that his excuse of being incarcerated was not a valid one for failing to meet the requirement that he pay $20 per month for the support of his child. It argues that when a person's child is in the care of the state, that parent is obligated to support the child. It also argues that O.B. admitted that he had not made any contributions to the child's care while she was in foster care and, thus, proved his intent to avoid parental responsibility.

The state further argues that an incarcerated parent cannot use his imprisonment as an excuse to escape parental obligations. O.B.'s incarceration was a voluntary act that caused his child to be unsupported. Last, it contends that the trial court's decision to terminate his parental rights was made in the best interest of the child. She had been in foster care for

three years at the time of the trial and had been with the same foster parent since November 2016.  The child is bonded to the foster parent, who has indicated that she would like to adopt her if she is allowed to do so by the court's action in terminating O.B.'s parental rights.

La. Ch. C. art. 1035 states:

A. The petitioner bears the burden of establishing each element of a ground for termination of parental rights by clear and convincing evidence.

B. The parent asserting a mental or physical disability as an affirmative defense to abandonment under Article 1015(5) bears the burden of proof by a preponderance of the evidence.

La. Ch. C. art. 1015 states in pertinent part as follows:

The grounds for termination of parental rights are:

(5) Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:

* * *

(b)  As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.

(c)  As of the time the petition is filed, the parent has failed to maintain significant contact with the child by visiting him or communicating with him for any period of six consecutive months.

* * *

(7) The child is in the custody of the department pursuant to a court order or placement by the parent; the parent has been convicted and sentenced to a period of incarceration of such duration that the parent will not be able to care for the child for an extended period of time, considering the child's age and his need for a safe, stable, and permanent home; and despite notice by the department, the parent has refused or failed to provide a reasonable plan for the appropriate care of the child other than foster care.

A parent has a constitutionally protected liberty interest in establishing and maintaining a meaningful relationship with his or her children. *State in the Interest of A.C.*, 93-1125 (La. 1/27/94), 643 So. 2d 719, *cert. denied*, 515 U.S. 1128, 115 S. Ct. 2291, 132 L. Ed. 2d 292 (1995); *State ex rel. B.H. v. A.H.*, 42,864 (La. App. 2 Cir. 10/24/07), 968 So. 2d 881. This parental interest includes the "companionship, care, custody, and management of his or her children." *Id.* Congruent with the parental interest, the state has a legitimate interest in limiting or terminating parental rights under certain conditions. *State in the Interest of A.C.*, *supra*; *State ex rel. B.H. v. A.H.*, *supra.* The fundamental purpose of involuntary termination proceedings is to provide the greatest possible protection to a child whose parents are unwilling or unable to provide adequate care for his physical, emotional and mental health needs and adequate rearing by providing an expeditious judicial process for the termination of all parental rights and responsibilities and to achieve permanency and stability for the child. *State in Interest of D.R.B.*, 52,843 (La. App. 2 Cir. 6/26/19), 278 So. 3d 407.

When the state seeks to terminate parental rights, it bears the burden of establishing each element of a ground for termination of parental rights under La. Ch. C. art. 1015 by clear and convincing evidence. La. Ch. C. art. 1035; *State in Interest of D.R.B.*, *supra.* This heightened burden of proof requires the state to show not only that the existence of the fact sought to be established is more probable than not, but that the fact is highly probable or more certain. *Id.*

Although there are various grounds for termination of parental rights set forth in La. Ch. C. art. 1015, only one ground need be established. *State*

*ex rel. SNW v. Mitchell*, 01-2128 (La. 11/28/01), 800 So. 2d 809. Once a ground for termination has been established, the judge may terminate parental rights if the termination is in the best interest of the child. The trial court's factual findings will not be set aside in the absence of manifest error. *State in Interest of D.R.B.*, *supra*.

Imprisonment is not an excuse to escape parental obligations. *State in Interest of S.G.*, 52,700 (La. App. 2 Cir. 6/5/19), 273 So. 3d 1279. Incarceration is not a defense to failure to support or maintain contact with one's children in a termination-of-parental-rights case, particularly because incarceration results from one's own actions. *Id.*

In the case at bar, the trial court concluded that the state had met its burden of proof and that termination of O.B.'s parental rights was warranted. Only one of the statutory grounds for termination needed to be established, and the state established several of the grounds found in La. Ch. C. art. 1015(5) and La. Ch. C. art. 1015(7).

O.B. was first made aware that he might have fathered a child when he submitted to the DNA test in 2017. The DCFS established a case plan for him to follow which included establishing a relationship with his daughter and providing $20 per month for her support in foster care. He never saw the child or sent her any cards or letters, claiming that his incarceration prevented him from following through with any of the methods of contacting her, visiting with her or supporting her in any way.

Based on the foregoing, we find that the judgment of the trial court was correct and that the state met its burden of proof that O.B.'s parental rights to S.D. should be terminated.

8

La. C.C.P. art. 2164 concerns the scope of the appeal and the award of damages and the taxation of costs in the lower court and this court and states that this court may make any such decision that it considers equitable. O.B. was allowed to file his appeal *in forma pauperis*. Because a parent has a constitutionally protected liberty interest in establishing and maintaining a meaningful relationship with his or her children, the costs of this appeal will not be assessed to him.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court, terminating the parental rights of O.B. over S.D. Given O.B.'s pauper status, we decline to assess costs of this appeal against him.

**AFFIRMED**.